**JOSEPH MARTIN MCGHEE**
300 W High Country Tr.
Flagstaff, AZ 86005
Email: McGhee.v.Bondi.et.al@gmail.com
Tel: (928) 331-0042
*Pro Se Plaintiff*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph McGhee, | No. CV-25-08143-PCT-DJH |
| Plaintiff, | **PLAINTIFF'S AMENDED MOTION TO VACATE AI DISCLOSURE REQUIREMENT, OR, ALTERNATIVELY, FOR § 1292(b) CERTIFICATION AND STAY** |
| v. | |
| Pamela Bondi, et al, | |
| Defendants. | |

Plaintiff Joseph McGhee files this Amended Motion, which supersedes and replaces in its entirety the Motion to Vacate AI Disclosure Requirement filed September 27, 2025 (Doc. 23). Amendment is being made here to incorporate additional requests for relief which are necessary to the efficient resolution of this threshold issue.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

This Court has a fundamental duty to ensure that pro se litigants are not unfairly prejudiced by technical requirements.[1] The Court's September 9th Order (Doc. 16) imposes "Artificial Intelligence ('AI') Disclosure Requirements" that, while ostensibly benign, create a solution where no problem exists and, critically, inflict affirmative harm: **(1)** disclosing the specific AI tool used; and **(2)** certifying that all representations and citations have been verified for accuracy. (*Id.* at 3).

The certification requirement duplicates Rule 11's existing, non-delegable duties and is therefore unnecessary. The disclosure requirement is pernicious—it compels stigmatizing speech, invades core work product, and is impermissibly vague. It's also not a neutral act because it chills the adoption of beneficial technological tools,[2] including or particularly by pro se parties—the litigants who stand to benefit the most from proper AI use.[3]

Because this portion of the Order is superfluous, unconstitutional, and actively impedes the just, speedy, and inexpensive determination of every action, it should be vacated in its entirety.

---

[1] *See Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1988).

[2] *See* Andrea Bucher, *Navigating the Power of Artificial Intelligence in the Legal Field,* 62 HOUS. L. REV. 819, 825-28 (2025) (discussing how the legal profession has used AI to supplement work product).

[3] *See, e.g.,* Natalie Runyon, *Chatbots for justice: The impact of AI-driven tech tools for pro se litigants,* THOMPSON REUTERS (Feb. 12, 2025).

## I. THE CERTIFICATION REQUIREMENT IS SUPERFLUOUS AND AFFIRMATIVELY HARMFUL

The Order mandates a party to "certify that all representations and citations in the AI-assisted filing have been verified for accuracy." (Doc. 16 at 3). This certification is a solution in search of a problem: Rule 11 already imposes a strict, personal, and non-delegable duty to ensure that factual contentions have evidentiary support and legal contentions are warranted by law. *See* Fed. R. Civ. P. 11(b). Merely signing and filing a paper *unavoidably* triggers certification under Rule 11 that the filer conducted a "reasonable inquiry" and verified their work. *See* Fed. R. Civ. P. 11(b)(2)-(3); *In re Keegan Mgmt. Co., Sec. Litig.,* 78 F.3d 431, 434 (9th Cir. 1996) (Rule 11 violated where filing is "both baseless and made without a reasonable and competent inquiry." (quotation omitted)).

The Court's additional certification requirements for "AI-assisted" filings invents a meaningless distinction, implicitly undermining Rule 11's universality and gravity. In fact, this duty of verification is *absolute*—it doesn't fluctuate based on the drafting tools employed. Rule 11 cares not whether a false citation originates from generative AI "hallucination," outdated treatise, faulty memory, or human error, because it's all the same sanctionable conduct: failure to conduct a reasonable inquiry. Whatever the Order seeks to achieve through mandatory AI disclosure, Rule 11 already does—and with the added bonus of abundant precedent. *See Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.,* 892 F.2d

3

802, 811 (9th Cir. 1989) (primary purpose of Rule 11 is "deterrence of frivolous litigation") (citations omitted).

While the Order's final sentence—"A party's reliance on an AI tool will not excuse a failure to make a reasonable inquiry under Rule 11"—correctly states the law, in doing so it renders the preceding certification requirement entirely redundant. And this redundancy is not benign. By adding a procedural hoop that serves no purpose other than to single out one drafting tool for special, unwarranted scrutiny, the Order strongly implies that AI-assisted work is inherently less trustworthy than other tools and forms of legal drafting.[4]

All this creates an unnecessary, irrational burden on parties; it also risks fostering a perception of bias against parties who leverage modern technology for the efficient administration of justice.

## II. THE DISCLOSURE REQUIREMENT VIOLATES THE FIRST AMENDMENT BY COMPELLING STIGMATIZING SPEECH, WHICH IMPOSES AN UNFAIR CREDIBILITY DEFICIT

The Order forces a litigant to "clearly disclose in the filing what AI tool was used." (Doc. 16 at 3). Far from being a neutral act, this mandate is a court-compelled signal of potential unreliability. In the current legal climate, where

---

[4] *But see* James E. Baker et al., *An Introduction to Artificial Intelligence for Federal Judges,* 42 (Fed. Jud. Ctr. 2023) (discussing that "[p]redictive [AI] algorithms are used, … in a variety of judicial and collateral settings," with some of the most frequently cited judicial applications being algorithms "predicting pretrial flight risk to help determine whether and at what amount to set bail").

concerns about AI "hallucinations" and accuracy abound,[5] such a disclosure brands the work product with an immediate and unjustified stigma. It invites the Court and opposing counsel to apply a heightened, prejudicial skepticism that would not be applied to a brief drafted with other, equally fallible tools—be it a legal treatise, a formbook, or human intellect. This disclosure effectively forces the party to preface their arguments with a disclaimer that they should be viewed with caution, creating an immediate and unfair credibility deficit.

Regardless, forcing a party to utter this message against their will is unconstitutional compelled speech. *See Riley v. Nat'l Fed'n of the Blind of N.C., Inc.,* 487 U.S. 781, 800 (1988); *Consolidated Edison Co. v. Public Service Comm'n of New York,* 447 U.S. 530, 537–538 (1980) (government may not dictate the content of speech absent compelling necessity, and then, only by means precisely tailored); *NAACP v. Button,* 371 U.S. 415, 438 (1963) ("Broad prophylactic rules in the area of free expression are suspect." (citations omitted)). The litigant, having been made an instrument of the Court's implicit policy of discouraging AI use, becomes legally obligated to endorse a message of suspicion regarding

---

[5] *See, e.g., Mavy v. Comm'r of Soc. Sec. Admin.,* No. CV-25-00689-PHX-KML (ASB), 2025 WL 2355222, at *5 (D. Ariz. Aug. 14, 2025); *Strike 3 Holdings, LLC v. Doe,* 2025 WL 882212, at *3 (C.D. Cal. Jan. 22, 2025); *United States v. Hayes,* 763 F. Supp. 3d 1054, 1065 (E.D. Cal. 2025).

their own work. This epitomizes compelled speech: 'Say what we tell you to say, or you don't get your day in court.'

Furthermore, the disclosure mandate disproportionately and prejudicially falls on pro se litigants, who already face an uphill battle for credibility and whose filing are already scrutinized with a heightened degree of skepticism.[6] Compelling these litigants to then self-stigmatize their work product serves only to erect an additional, unconstitutional barrier to meaningful access to justice.

### III.  THE DISCLOSURE MANDATE ALSO INFRINGES ON THE WORK PRODUCT DOCTRINE

The choice of tools for legal research, brainstorming, and drafting is not a mere administrative detail; it is a core aspect of trial preparation, reflecting a litigant's mental impressions, conclusions, opinions, and legal theories. This is precisely the type of information protected by the work product doctrine. *See* Fed. R. Civ. P. 26(b)(3); *Hickman v. Taylor,* 329 U.S. 495, 509–12 (1947).

Compelling disclosure of the specific AI tool used—whether it is a general-purpose AI, a specialized legal AI, or a research platform with AI features—gives opposing counsel an unfair and impermissible window into the litigant's strategic processes. *See Holmgren v. State Farm Mut. Auto. Ins. Co.,* 976 F.2d

---

[6] *See* Jona Goldschmidt, *Equal Injustice for All: High Quality Self-Representation Does Not Ensure a Matter is "Fairly Heard,"* 44 SEATTLE L. REV. SUPRA 75 (2021).

573, 576 (9th Cir.1992) (a primary purpose of the work product doctrine is to prevent one party exploiting the other party's efforts to prepare for litigation). Such forced disclosure reveals how a litigant approaches complex legal problems, the methodologies they employ for research and argument construction, and where they might be focusing their analytical efforts. *United States v. Nobles,* 422 U.S. 225, 238–39 (1975) ("At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.").

### A. It Impermissibly Forces Litigants to Reveal the Identity of Their Contracted Litigation Agents

The work product doctrine "protects material prepared by agents for the attorney as well as those prepared by the attorney himself." *Id.* (footnote omitted)); *In re Grand Jury Subpoena,* 357 F.3d 900, 907 (9th Cir.2004) (same). And a generative AI platform is not an inert tool; it is a sophisticated agent engaged by the litigant pursuant to a binding contractual agreement. The use of any such platform is predicated on the user's affirmative assent to a lengthy Terms of Service or Acceptable Use Policy—a legally enforceable contract governing the scope of the platform's services and the user's rights. *Berman v. Freedom Fin. Network, LLC,* 30 F.4th 849, 856 (9th Cir. 2022) ("an enforceable contract will be found" if the website "provides reasonably conspicuous notice of the terms to which the consumer will be bound" and "the consumer takes some

action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms" (citation omitted)). This contractual relationship establishes a classic principal-agent dynamic for the purpose of litigation preparation, where the litigant (the principal) engages the AI (the agent) to perform specific, directed tasks—legal research, drafting, analysis—to aid in the preparation of their case.

The choice of which specific AI "agent" to contract with is inextricably a core work product mental impression: it is a strategic decision reflecting the litigant's assessment of which platform's capabilities, training data, and analytical strengths are best suited to develop their legal theories and arguments. Forcing disclosure of the AI tool is the functional equivalent of compelling a litigant to reveal the identity of a specially retained consulting expert or a proprietary research firm. It provides opposing counsel with a strategic window into the litigant's preparation methods, which the work product doctrine is specifically designed to prevent. *See In re Grand Jury,* 23 F.4th 1088, 1093 (9th Cir. 2021) (the doctrine prevents a party from a taking a "free-ride" on the work of their opponent).

By compelling the disclosure of these contracted agents, the Court's Order does not regulate a mere administrative detail. Rather, it invades the privileged zone of litigation strategy sheltered by the work product doctrine. In doing so, it

8

also chills the innovative use of tools that could enhance the quality and efficiency of legal advocacy.

## IV.   "GENERATIVE AI TOOL" IS AN UNCONSTITUTIONALLY VAGUE TERM, INVITING ARBITRARY ENFORCEMENT AND CHILLING THE USE OF BENEFICIAL TECHNOLOGY

The Order fails to define "generative AI tool," (Doc. 16 at 3), a term which is neither a legal term of art nor is it self-evident in the rapidly evolving landscape of technology. Thus, the ambiguity inherent in this undefined term imposes a profound lack of "fair notice," violating the Due Process Clause. *See Johnson v. United States,* 576 U.S. 591, 595 (2015) (statute is unconstitutionally vague if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits). A litigant of ordinary intelligence who is neither a software engineer nor an AI system administrator cannot know with *certainty* what conduct triggers the disclosure requirement. Does it encompass:

- The AI-powered grammar and style suggestions now integrated into standard word processors like Microsoft Word or Grammarly?

- The legal writing analysis and scoring features within tools like BriefCatch?

- The predictive text and auto-complete functionalities ubiquitous in modern communication platforms?

9

- AI-driven research summaries, citation analysis, and other machine learning features, which are increasingly prevalent within standard legal research platforms such as Westlaw Precision or LexisNexis?

Pervasive uncertainty of this magnitude virtually guarantees arbitrary and inconsistent enforcement: punishing conscientious litigants who attempt in good faith to comply while others either inadvertently or strategically violate the rule. Consequently, this vagueness chills the use of common, beneficial tools that enhance efficiency and accuracy, ultimately forcing litigants to choose between the risk of unintentionally violating the Court's order and foregoing technological advancements that could improve their advocacy. *See In re Dual-Deck Video Cassette Recorder Antitrust Litig.,* 10 F.3d 693, 695 (9th Cir. 1993) (civil contempt "need not be willful," and there is no good faith exception to the requirement of obedience to a court order).

It's hardly a stretch to conclude that the Order's impermissibly vague language imposes an unnecessary, unconstitutional barrier to the effective use of technology in litigation. To be sure, uncertainty as to the precise meaning of "generative AI tool" will disproportionately deter pro se parties—ironically, the class of litigants most likely to realize a substantial benefit from proper AI use.

V. **TO PREVENT IRREPARABLE HARM, THE COURT SHOULD ENTER AN EXPEDITED RULING ON THIS MOTION, CERTIFY AN INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b), AND STAY THE DISCLOSURE REQUIREMENT PENDING REVIEW**

A. **Preliminary Request for Summary Ruling**

As a threshold matter, Plaintiff respectfully requests that the Court, pursuant to its inherent authority and LRCiv 83.6, suspend the application of LRCiv 7.2(c) and enter a summary ruling on this Motion without awaiting a response from Defendants. This Motion challenges a general administrative order of the Court that governs the conduct of all litigants, and Defendants have no particularized interest in defending a Court order lacking any application to them.

The issues presented are pure questions of law between Plaintiff and the Court. Allowing a response serves only to delay the resolution of a critical, case-impeding issue without any countervailing benefit. Judicial economy and the prevention of immediate, irreparable harm warrant an expedited summary process. Likewise, the constitutional and procedural infirmities in the Court's AI Disclosure Order, detailed above, demand not merely vacatur but also expedited and comprehensive procedural relief.

Plaintiff therefore requests the Court: **(1)** enter an expedited ruling on this Motion to prevent further impediment to this litigation; **(2)** upon any denial, certify the order for immediate interlocutory appeal under 28 U.S.C. § 1292(b);

and (3) enter an immediate stay of the Disclosure Requirement pending appellate review to prevent irreversible harm.

> **B. Because the Disclosure Order Is an Unjust Impediment to Prosecuting This Case, the Court Should Expedite Ruling on This Motion**

This Motion requires a prompt resolution. The Court's Disclosure Order is not a passive rule; it's an active barrier preventing Plaintiff from filing his Amended Complaint without suffering the very constitutional and work-product injuries he alleges.

This Court has "the inherent authority to manage [its] dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin,* 579 U.S. 40, 47 (2016) (collecting cases). That authority should be exercised here. Forcing a litigant to choose between violating a court order and compromising fundamental litigation privileges creates an intolerable dilemma that stymies the progress of this action. A swift ruling is necessary to lift this barrier and allow the case to proceed on its merits, serving the interests of justice and judicial economy.

> **C. This Court Should Certify an Interlocutory Appeal, as the Order Presents Controlling Questions of Law on Which There Is Substantial Ground for Difference of Opinion**

Should the Court deny Plaintiff's request to vacate the Disclosure Order, it should simultaneously certify the order for interlocutory appeal given that the standards for certification under 28 U.S.C. § 1292(b) are squarely met here.

### 1. The Order Involves Controlling Questions of Law

A question is "controlling" when "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig. (MDL No. 296),* 673 F.2d 1020, 1026 (9th Cir. 1981) (cleaned up). The questions presented here—whether a court can compel a litigant to disclose work-product-protected litigation tools and engage in stigmatizing speech—are pure question of law. *See, e.g., Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.,* 605 F.3d 703, 707 (9th Cir.2010) (interlocutory appeal "limited to … purely legal question[s]"). Their resolution will control whether Plaintiff must disclose core strategic information throughout the entirety of this lawsuit, fundamentally altering the adversarial landscape.

### 2. Substantial Ground Exists for Difference of Opinion

This requirement is satisfied where "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, … or if novel and difficult questions of first impression are presented." *Couch v. Telescope Inc.,* 611 F.3d 629, 633 (9th Cir. 2010).

The questions here are textbook examples: no federal appellate court case has yet addressed the constitutionality of mandated AI-tool disclosure, let alone when applied to pro se litigants—a class uniquely vulnerable to procedural uncertainty. The novel intersection of the First Amendment's compelled-speech doctrine and the Work Product Doctrine with emerging litigation technologies

presents "novel and difficult" legal questions. *See Id.* The existence of a first-impression constitutional challenge alone establishes substantial grounds for disagreement.

### 3. Immediate Appeal Will Materially Advance the Ultimate Termination of the Litigation

Resolving these threshold issues now will "avoid protracted and expensive litigation." *U.S. Rubber Co. v. Wright,* 359 F.2d 784, 785 (9th Cir. 1966). Without an immediate appeal, the parties will be forced to litigate the entire case under a cloud of uncertainty, with Plaintiff facing continuous, irreparable injury from each compelled disclosure. A final ruling from the Ninth Circuit provides definitive guidance—settling a foundational dispute that affects every filing in this case. It would streamline future proceedings, conserving judicial resources not only in this case but also potentially Circuit-wide.

### D. A Stay Pending Appeal is Necessary to Prevent Irreparable Harm and Preserve the Status Quo

Finally, if the Court certifies this issue for appeal, it must stay the Disclosure Requirement. The standard for a stay pending appeal mirrors that for a preliminary injunction. *Compare Hilton v. Braunskill,* 481 U.S. 770, 776 (1987) (citations omitted), *with Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 22 (2008). Courts must consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of

the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Golden Gate Restaurant Ass'n v. City and County of San Francisco,* 512 F.3d 1112, 1115 (9th Cir.2008) (emphases added)). Plaintiff easily satisfies this test.

### 1. Likelihood of Success on the Merits

As demonstrated in Sections I-IV *supra*, Plaintiff's challenge raises "serious legal questions" with at least a "fair prospect" of success. *Leiva-Perez v. Holder,* 640 F.3d 962, 967-68 (9th Cir. 2011). The constitutional and privilege violations alleged are substantial and well-founded.

### 2. Irreparable Harm

This factor is dispositive. Plaintiff will suffer irreparable harm absent a stay. *See Nken v. Holder,* 556 U.S. 418, 434 (2009) (irreparable harm factor is "critical"). The injury here is not merely prospective; it is already here. Plaintiff is *presently* compelled to forego the use of at least one specific, sophisticated AI tool to which he has access, precisely because he does not wish to disclose that particular strategic asset and its connection to his litigation strategy to opposing counsel. This is the chilling effect in its most concrete form: the Court's Order is *right now* dictating the tools a litigant can use to prepare his case, directly invading the "mental processes of lawyers" that the work product doctrine is designed to shelter. *Hickman v. Taylor,* 329 U.S. 495, 514 (1947); *see Nobles,* 422 U.S. at 238–39.

The Court's Order also creates a profound and dangerous ambiguity that exponentially chills the use of technology: If the very *use* of an AI tool is deemed outside the scope of work-product protection and therefore subject to *compelled* disclosure, then it rationally follows that the *content* of a litigant's interactions with that tool—prompts, queries, and dialogues that embody their most direct legal reasoning and strategy—could likewise be deemed discoverable. The Order *implicitly* declares that the identity of the tool is not privileged, which *tacitly* invites argument that such interactions are also fair game. This doesn't just chill the use of AI; it incentivizes its concealment, rewarding the less-than-forthcoming while punishing conscientious litigants.

The irreparable harm is thus twofold. Plaintiff suffers not only a *current deprivation* of beneficial tools, but also the *future threat* of being forced to disclose the mental impressions, conclusions, opinions, or legal theories that the Federal Rules explicitly protect. Fed. R. Civ. P. 26(b)(3)(B). Once this strategic cat is out of the bag, it cannot be put back in.

### 3. Balance of Equities and Public Interest

The equities tip sharply in Plaintiff's favor. His injury—the violation of constitutional rights and core litigation privileges—is severe and immediate. By contrast, the injury to Defendants and the Court from a temporary stay is nonexistent. No prejudice occurs from reading a filing lacking an AI disclosure, especially where the reader has law clerks or associates on tap for assistance.

The public interest, meanwhile, lies in preserving the constitutional and procedural rights of litigants and in the correct application of the work product doctrine. *Vitolo v. Guzman,* 999 F.3d 353, 360 (6th Cir. 2021) ("it is always in the public interest to prevent violation of a party's constitutional rights." (citations omitted)). Granting a stay to preserve these fundamental rights pending interlocutory appellate review serves that paramount public interest.

## CONCLUSION

The Disclosure Requirements are legally infirm: the certification mandate is a redundant, prejudicial echo of Rule 11; the disclosure mandate compels stigmatizing speech, the work product doctrine, and is impermissibly vague. Resolution of these first impression issues will also define the rights of litigants and the boundaries of judicial authority in the age of AI. Plaintiff respectfully requests that the Court suspend LRCiv 7.2(c) and enter a summary ruling on this Motion vacating the AI Disclosure Requirements portion of the Court's Order (Doc. 16). In the alternative, upon denial, certify the order under 28 U.S.C. § 1292(b) and issue an immediate stay of the Disclosure Requirement pending appellate review.

Filed Sunday, September 28, 2025

/s/ Joseph McGhee
*Pro Se Plaintiff*

## ARTIFICIAL INTELLIGENCE DISCLOSURE

Pursuant to the Court's September 9, 2025, Order (Doc. 16), Plaintiff, under objection, discloses that the following generative and other AI tools were used to prepare this Motion: **(1)** Westlaw Precision; **(2)** BriefCatch; and **(3)** Microsoft CoPilot. Plaintiff certifies that all representations and citations in this filing have been verified for accuracy using Westlaw.

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2025, I electronically transmitted the foregoing document to the Clerk of the Court using the CM/ECF system, which will send notification of electronic filing to all counsel of record.

/s/ Joseph McGhee
*Pro Se Plaintiff*